IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


MICHAEL BALLOU, HENRY MARTINEZ,
MATTHEW SPINNATO, CESAR RICANO,
JEREMY FLYNN, JERRY PORCHIA,
DAVID GOODNIGHT, and DANA MOYE,

                Plaintiffs,

v.                                                    Case No. 20-2640-JWB

UNITED PARCEL SERVICE, INC.,

                Defendant.


## MEMORANDUM AND ORDER

This case comes before the court on Defendant's motion to dismiss for failure to state a claim. (Doc. 7.) The motion is fully briefed and is ripe for decision. (Docs. 8, 11, 14.) For the reasons stated herein, the motion is GRANTED IN PART and DENIED IN PART.

## I. Facts

The following allegations are taken from Plaintiffs' complaint (Doc. 1-1) and are assumed to be true for purposes of deciding the motion to dismiss.

Plaintiffs are "feeder driver" employees of Defendant, meaning they operate 18-wheel commercial vehicles on behalf of Defendant. They were recruited and hired by Defendant in the fall of 2018. Plaintiffs allege they accepted full-time job offers with Defendant "on the express representations of UPS management that plaintiffs would be paid $30/hour for all 'Feeder' related driving to be done over-the-road, and would be paid $25/hour for all driving tasks" within "the Hub" – that is, driving tasks outside the prime delivery season within the local area. (Doc. 1-1 at 4.) Plaintiffs commenced their employment with UPS in justifiable reliance upon "the explicit

promise and commitment of [Defendant] to pay the compensation described…." (*Id.*) Plaintiffs further allege they were "assured during their recruitment that their positions would guarantee full-time work, with 40-hour work weeks as a minimum." (*Id.* at 4-5.)

When Plaintiffs first began work for Defendant in the fall of 2018, Defendant honored its representations and paid $30/hour for over-the-road feeder driving by Plaintiffs. Within several months of starting, however, Plaintiffs were told their work in the Hub would be paid at $15/hour rather than the previously represented $25/hour. Moreover, when feeder-related driving thereafter became available to Plaintiffs, they were paid $23/hour rather than $30/hour. (*Id.* at 4.) The full-time work week promised by Defendant was not met; Plaintiffs worked as little as one day a week. (*Id.* at 5.)

Plaintiffs allege that in justifiable reliance on the assurances made by Defendant, they moved, relocated, or otherwise quit other jobs in order to accept the positions with Defendant. The complaint alleges the following claims: Count I - negligent misrepresentation; Count II - fraud through silence; Count III – fraud; and Count IV – violation of the Kansas Wage Payment Act. (*Id.* at 5-10.) Plaintiffs are residents of the states of Missouri and/or Kansas. Defendant is an Ohio corporation. The amount in controversy exceeds $75,000.

Defendant asserts that Plaintiffs' terms and conditions of employment (including pay rates and hours) are the subject of a collective bargaining agreement ("CBA") between Defendant and Plaintiffs' union, the International Brotherhood of Teamsters, Local Union 41 ("Union"). (Doc. 8 at 1.) Defendant argues that because the CBA expressly addressed pay, hours, and other compensation, the Labor Relations Management Act (LMRA) completely preempts Plaintiffs' claims. (*Id.* at 2.) Additionally, Defendant argues the claims are preempted under *San Diego Bldg.*

*Trades Council v. Garmon,* 359 U.S. 236 (1959), because the allegations implicate conduct within the exclusive jurisdiction of the National Labor Relations Board ("NLRB").  (*Id.*)

## II.  Standards

### A.  Rule 12(b)(6)

In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). As the Tenth Circuit observed:

> Determining whether a complaint contains enough well-pleaded facts sufficient to state a claim is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. The court must determine whether the plaintiff has pleaded enough facts to state a claim for relief that is plausible on its face, not just conceivable. Though a complaint need not provide detailed factual allegations, it must give just enough factual detail to provide fair notice of what the claim is and the grounds upon which it rests. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not count as well-pleaded facts. If, in the end, a plaintiff's well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint fails to state a claim.

*Carbajal v. McCann*, 808 F. App'x 620, No. 18-1132, 2020 WL 1510047, at *3 (10th Cir. Mar. 30, 2020).

### B.  LMRA Preemption

Section 301 of the LMRA provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter ... may be brought in any district court of the United States having jurisdiction of the parties...." 29 U.S.C. § 185(a).  "This provision has been construed 'as a congressional mandate to

the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts.'" *Rael v. Smith's Food & Drug Centers, Inc.*, 712 F. App'x 802, 804 (10th Cir. 2017) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985)).  Section 301 has a preclusive effect "such that '[a] state rule that purports to define the meaning or scope of a term in a contract suit ... is pre-empted by federal labor law.'"  *Id.* (quoting *Allis-Chalmers,* 471 U.S. at 210).  "In *Allis-Chalmers*, the Supreme Court extended this rule beyond breach of contract claims, stating that 'questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort.'"  *Id.* (quoting *Allis-Chalmers*, 471 U.S. at 211). "Ultimately, the Court held that preemption depends on 'whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract.'"  *Id.* (quoting *Allis-Chalmers*, 471 U.S. at 213).

> *Rael* summarized a later Supreme Court ruling on § 301 preemption as follows:
>
> Applying this test, the Supreme Court held in *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 401 … (1988), that a state law claim alleging a retaliatory discharge for filing a workers' compensation claim was not preempted by § 301. The Court reasoned that the "purely factual questions" necessary to prove the elements of this claim could be determined without interpreting any term of a CBA. *Id*. at 407 … (noting the factual issues were whether an employee was discharged or threatened with discharge and whether the employer's motivation was to deter the employee from exercising his workers' compensation rights). Thus, under *Lingle*, "an application of state law is preempted by § 301 ... only if such application requires the interpretation of a collective-bargaining agreement." *Id*. at 413….

*Rael,* 712 F. App'x at 804-05.  In other words, even if dispute resolution pursuant to a CBA, on the one hand, and state law, on the other, would require addressing "precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 purposes."  *Lingle,* 486 U.S. at 410.  Section 301

preemption merely ensures that federal law will be the basis for interpreting CBAs; it says nothing about the rights a state may provide workers when adjudication of those rights does not depend on interpretation of a CBA.  *Id.* at 409.

### C.  *Garmon* Preemption

"In *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 … (1959), the Supreme Court divested the states of the power to make laws over activities that are arguably protected or prohibited by the NLRA."  *Felix v. Lucent Techs., Inc*., 387 F.3d 1146, 1165 (10th Cir. 2004) (citing *Garmon*, 359 U.S. at 244).  "'*Garmon* preemption'" applies when the 'controversy presented to the state court is identical to ... that which could have been, but was not, presented to the Labor Board.'"  *Id.* at 1165-66 (citation omitted.)  It is a reflection of Congress's decision to vest exclusive jurisdiction in the NLRB.  If it applies, neither a federal court nor a state court has jurisdiction; the case must be adjudicated by the NLRB.  *Id.* at 1166.  To show that an activity is "arguably" covered by the NLRA

> mean[s] that the party claiming pre-emption is required to demonstrate that his case is one that the [NLRB] could legally decide in [the suing employee's] favor. That is, a party asserting pre-emption must advance an interpretation of the Act that is not plainly contrary to its language and that has not been "authoritatively rejected" by the courts or the Board. The party must then put forth enough evidence to enable the court to find that the Board reasonably could uphold a claim based on such an interpretation.

*Int'l. Longshoremen's Ass'n v. Davis,* 476 U.S. 380, 395 (1986).  *See also Butcher v. Teamsters Local 955,* No. 18-2424-JAR, 2018 WL 6200027, at *2-3 (D. Kan. Nov. 28, 2018) (noting that although the Supreme Court has characterized *Garmon* preemption as jurisdictional, it has placed the burden of demonstrating it on the party asserting it).

## III.  Analysis

### A.  LMRA Preemption

Defendant argues that because the CBA addressed the compensation, hours, and lay-off rules to which Plaintiffs were contractually entitled, the resolution of Plaintiffs' claims necessarily requires interpretation of the CBA or is substantially dependent on analysis of the CBA.  The court disagrees.  With one exception discussed below, Plaintiffs' claims are not dependent upon, and do not in fact claim, that Defendant breached the promises contained in the CBA.  Rather, they assert that Defendant intentionally or negligently made misrepresentations to Plaintiffs that induced them to accept employment.  Under Kansas law, "[t]he elements of fraudulent inducement are: (1) The defendant made false representations as a statement of existing and material fact; (2) the defendant knew the representations to be false or made them recklessly without knowledge concerning them; (3) the defendant made the representations intentionally for the purpose of inducing another party to act upon them; (4) the other party reasonably relied and acted upon the representations; (5) the other party sustained damages by relying upon the representations." *Stechschulte v. Jennings*, 297 Kan. 2, 19, 298 P.3d 1083, 1096 (2013).  Plaintiffs allege that prior to being hired, Defendant misrepresented the pay and working hours they would receive if they came to work for Defendant, that Plaintiffs reasonably relied on those representations, and that Plaintiffs thereby suffered damages because they moved or quit their jobs.  Nothing in such allegations is dependent upon construction of the CBA or upon a showing that Defendant breached it.  For that matter, Defendant may have perfectly complied with the CBA and may have paid Plaintiffs every penny owed under that agreement.  But that fact would not preclude a claim that Plaintiffs were fraudulently induced into accepting employment with Defendant and that they detrimentally relied on the misrepresentations by moving or quitting their jobs.

A similar distinction was made in *Felix,* where the Tenth Circuit noted the plaintiffs "do not assert any violation of contractual rights under any labor agreement, but rather sue to vindicate

their right not be defrauded.  They are thus asserting rights independent of the contract and are not preempted by § 301." *Felix,* 387 F.3d at 1164.  *Felix* cited other cases reaching the same conclusion, such as *Wynn v. AC Rochester,* 273 F.3d 153 (2d Cir. 2001), where the court found a claim for fraud was not preempted because the plaintiff's claim was "not that [the employer] did not provide what the CBA required, but that [the employer's] officials misled him into selecting one option by misrepresenting the availability of the other." *Felix,* 387 F.3d at 1164 (quoting *Wynn,* 273 F.3d at 159).

Another case cited in *Felix*, *Foy v. Pratt & Whitney Group,* 127 F.3d 229 (2d Cir. 1997), involved plaintiffs subject to a CBA who claimed their employer falsely told them they would be given a chance to transfer jobs before being laid off.  In reliance on the representation, they did not apply for open positions.  They were then laid off without a chance to apply for a transfer.  The employer argued that claims for misrepresentation were preempted because they required interpretation of the CBA, which contained provisions governing transfers.  The Second Circuit found the misrepresentation claim was not preempted:

> In this case, what matters is not so much the accurate construing of the CBA, but plaintiffs' understanding of its provisions, and the basis of that understanding. Unlike *Allis–Chalmers*, this case does not involve a tort premised on the violation of duties in the CBA. 471 U.S. at 215, 105 S. Ct. at 1913. These plaintiffs' state law misrepresentation claims depend upon the employer's behavior, motivation, and statements, as well as plaintiffs' conduct, their understanding of the alleged offer made to them, and their reliance on it. *See Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 231–32 (3d Cir.1995). Reference to the CBA may be needed, but state law will play no part in determining what the parties agreed to in the CBA or whether the CBA has been breached. *See Livadas [v. Bradshaw]*, 512 U.S. [512 U.S. 107,] at 122–24, 114 S. Ct. at 2078 [1994]. State law—not the CBA—is the source of the rights asserted by plaintiffs: the right to be free of economic harm caused by misrepresentation.

*Foy,* 127 F.3d at 235.[1]  Plaintiffs' claims of negligent misrepresentation, fraud by silence, and fraud are similarly based upon alleged misrepresentations that are distinct and apart from the CBA and which could provide a basis for relief even if Defendant complied with the CBA.

Defendant contends Plaintiffs are improperly relying on allegations outside the complaint by arguing the misrepresentations occurred before Plaintiffs became employees covered by the CBA.  (Doc. 14 at 2-3.)  But when all reasonable inferences from the complaint are drawn in Plaintiffs favor – which the court is required to do on a motion to dismiss – it is clear Plaintiffs have alleged that the misrepresentations occurred at least in part before Plaintiffs were hired.  *See e.g.,* Doc. 1-1 at 5 (Defendant made misrepresentations "in the course of its recruitment … of plaintiffs") and *id.* at 6 (Defendant did so "to influence … plaintiffs' decisions as to whether to accept positions of employment….")  In sum, as to Counts I, II, and III, Defendant has not shown it is entitled to dismissal based on LMRA preemption.

Count IV stands on a different footing.  It seeks "wages and/or compensation … due to plaintiffs" pursuant to K.S.A. 44-313 and 44-314.  (Doc. 1-1 at 9.)  The KWPA applies only to "employees," which means "any person allowed or permitted to work by an employer."  K.S.A. 44-313(b).  "Wages" means "compensation for labor or services rendered by an employee…."  *Id.* The court concludes this claim requires consideration and interpretation of the CBA.  By definition the claim applies only to the period of employment – not to recruitment – and requires resort to

---

[1] The employer in *Foy* also argued that proof of justifiable reliance on the misrepresentations would require interpretation of the CBA, because it would be unreasonable for an employee to rely upon representations that were at odds with terms of a CBA.  Although the court found this was a "close issue," it rejected the argument, concluding that preemption only applies when necessary to ensure that state laws do not determine what the parties to a labor agreement agreed upon or the legal consequences of breaching that agreement, and that such purposes would not be thwarted by allowing the plaintiffs to pursue their claims.  *Foy,* 127 F.3d at 234.  It bears noting that in *Wynn,* the Second Circuit stated in dicta that "no reasonable jury could find that it was reasonable for a laid-off employee to rely on oral representations from management about the contents of a CBA, without referring to the agreement itself or consulting union representatives."  *Wynn,* 273 F.3d at 156.  In the instant case, Defendant's motion to dismiss raises only the issue of preemption and does not otherwise challenge the sufficiency of the claims.

the CBA to determine the compensation to which Plaintiffs would be entitled for the "labor and services rendered" to Defendant. Additionally, the wages owed for work performed would be dependent in part upon amounts properly withheld by Defendant pursuant to the CBA. *See e.g.,* K.S.A. 44-319 (employer may withhold portion of wages pursuant to employment agreement). Unlike the first three claims, Plaintiffs have not articulated any basis independent of the CBA for determining the wages owed. This claim is accordingly preempted by § 301. *See Allis-Chalmers*, 471 U.S. at 213) (preemption depends on "whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract.")

### B. *Garmon* Preemption

*Garmon* preemption applies when the controversy is "identical to … that which could have been, but was not, presented to the [NLRB]." *Sears, Roebuck & Co.,* 436 U.S. at 197. Defendant fails to show that insofar as Plaintiffs' claim is based upon alleged misrepresentations occurring prior to their employment, the claim is one that could have been presented to the NLRB. *Cf. Butcher,* 2018 WL 6200027, at *2-3 (burden of demonstrating *Garmon* preemption is on the party asserting it). Defendant asserts that "[a]n employer who agrees to pay wages to bargaining unit members that are not collectively bargained may be alleged to have violated the NLRA," but this again overlooks the basis of Plaintiffs' misrepresentation claims. (Doc. 14 at 7.) Plaintiffs do not allege that Defendant made a side-deal when they were bargaining unit members to pay them more than the CBA called for; they claim Defendant fraudulently mispresented pay and working conditions for the purpose of inducing them to accept employment. Defendant makes no showing that such a claim is arguably protected or prohibited by the NLRA. The court accordingly denies the motion to dismiss insofar as it is based on *Garmon* preemption.

**IV.  Conclusion**

Defendant's motion to dismiss (Doc. 7) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED as to Count IV, which is DISMISSED; the motion is otherwise DENIED.  IT IS SO ORDERED this 18th day of March, 2021.


<u>s/ John Broomes</u>
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE